CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

9/21/2018

JULIA C. DUDLEY, CLERK
BY:   s/ CARMEN AMOS
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Lynchburg Division

JANET JENKINS, for herself and as next friend of ISABELLA MILLER-JENKINS, a/k/a Isabella Miller,

                    Plaintiffs,

      v.

KENNETH L. MILLER,

LIBERTY COUNSEL, INC.,

LIBERTY UNIVERSITY, INC.,

LINDA M. WALL,

LISA ANN MILLER, f/k/a Lisa Miller-Jenkins,

MATHEW D. STAVER, individually and as an agent of Liberty Counsel, Inc. and Liberty University, Inc.,

PHILIP ZODHIATES, individually and as an agent of Response Unlimited, Inc.,

RENA M. LINDEVALDSEN, individually and as an agent of Liberty Counsel, Inc. and Liberty University, Inc.,

RESPONSE UNLIMITED, INC., for itself and as an agent of Liberty Counsel, Inc. and Liberty University, Inc.,

TIMOTHY D. MILLER, and

VICTORIA HYDEN, f/k/a Victoria Zodhiates, individually and as an agent of Response Unlimited, Inc. and Liberty University, Inc.,

                    Defendants.

CASE NO.:  6:18CV00078

**COMPLAINT**

**JURY TRIAL DEMANDED**

NOW COME Plaintiffs herein, by and through their attorneys, and complain against Defendants for intentionally kidnapping and conspiring to kidnap Isabella Miller-Jenkins on or about September 21, 2009, and intentionally causing her continued detention outside the State of Vermont to the present day. Plaintiffs further complain against Defendants for conspiring to violate their civil rights in violation of 42 U.S.C. § 1985(3).

1.      This case is brought because Defendants, through their actions, sought to thwart entirely the orders of the trial and appellate courts of the State of Vermont and the Commonwealth of Virginia after all of their apparent legal options had been exhausted in both states. When it was clear, after six years of state court litigation, that there was no legal justification for the continuing and repeated contemptuous conduct of Lisa Miller and the continued obstruction of the parent–child relationship between Isabella Miller-Jenkins and Janet Jenkins, Defendants conspired to kidnap Isabella Miller-Jenkins and ensure her detention outside of the United States, beyond the reach of either the Vermont or the Virginia courts.

2.      A similar action is pending in the United States District Court for the District of Vermont brought by the same plaintiffs against these defendants. That court has entered several orders, including granting motions to dismiss on the pleadings in favor of Liberty University and Mathew Staver (which have not been appealed and were not certified pursuant to Rule 54(b) of the Federal Rules of Civil Procedure), and denying motions to dismiss brought by other defendants. This complaint is filed to comply with the Virginia statute of limitations, in the unlikely event that an appellate court reverses the assertion of personal jurisdiction over the defendants by the United States District Court for the District of Vermont. Therefore, this action should be stayed pending the resolution of the litigation now pending in Vermont.

## JURISDICTION AND VENUE

3.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1343, and/or 1367.

4.       Venue is proper in this forum pursuant to 28 U.S.C. § 1391 and Western District of Virginia General Rule 2(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and Division. Venue is also proper under principles of pendent venue because all claims arise out of the same nucleus of operative facts.

5.       <u>Personal jurisdiction</u>: Defendants are subject to personal jurisdiction in this District, having had more than minimum contacts with Virginia, as their conduct and connection with Virginia are such that they should reasonably anticipate being haled into court here.

6.       <u>Diversity Jurisdiction</u>: With respect to the state law claims, this is an action brought pursuant to 28 U.S.C. § 1332 between citizens of different states. The amount in controversy exceeds $75,000.

## PARTIES

7.       <u>Janet Jenkins</u>: Plaintiff Janet Jenkins is an individual and a resident and citizen of Fair Haven, Vermont.

8.       <u>Isabella Miller-Jenkins</u>: Plaintiff Isabella Miller-Jenkins, a/k/a/ Isabella Miller, is a minor child and daughter of Plaintiff Janet Jenkins and Defendant Lisa Miller. By order of the courts of the State of Vermont and the Commonwealth of Virginia, she is currently supposed to reside with Jenkins, who now resides in Fair Haven, Vermont, but upon information and belief, is currently outside the United States as the victim of kidnapping.

9.       <u>Lisa Ann Miller f/k/a Lisa Miller-Jenkins</u>: Upon information and belief, Defendant Lisa Miller has been living as a fugitive outside the United States amongst the Nicaragua Beachy Amish-Mennonite Christian Brethren, while she continues to abduct Plaintiff

Isabella Miller-Jenkins in knowing violation of the orders of the Rutland Family Division of the Vermont Superior Court. Before the abduction of Isabella, Lisa Miller lived in Forest, Virginia. She has sufficient ties to the Commonwealth of Virginia to subject her to the personal jurisdiction of this Court, and Plaintiffs' claims arise out of or relate to her conduct within or purposefully directed at the Commonwealth of Virginia.

10.     Kenneth L. Miller: Upon information and belief, Defendant Kenneth Miller is a resident and citizen of Stuart's Draft, Virginia, a pastor at the Pilgrim Christian Fellowship in Stuart's Draft, and a leader within the Beachy Amish-Mennonite community. He was also employed at his family's garden center, Millmont Greenhouses, Inc., in Stuart's Draft. Kenneth Miller was convicted after trial by jury of the crime of aiding and abetting international kidnapping in violation of 18 U.S.C. § 1204 in the United States District Court for the District of Vermont for his participation in the conspiracy to kidnap Isabella. Judgment was entered on March 6, 2013. He was sentenced to twenty-seven months imprisonment and one year of supervised release. The United States Court of Appeals for the Second Circuit entered judgment affirming the conviction on December 16, 2015. He was released from prison on March 6, 2018.

11.     Timothy Miller: Upon information and belief, Defendant Timothy Miller is a resident and citizen of Denver, Pennsylvania. He has sufficient ties to Virginia to subject him to the personal jurisdiction of this Court, and Plaintiffs' claims arise out of or relate to his conduct, which he purposefully directed at the Commonwealth of Virginia.

12.     Philip Zodhiates: Upon information and belief, Defendant Philip Zodhiates is a resident and citizen of Waynesboro, Virginia, and at all relevant times was the President and sole owner of Response Unlimited, Inc., a Delaware corporation with a principal place of business in Waynesboro, Virginia. Zodhiates was convicted after a jury trial of conspiracy to obstruct

4

parental rights, in violation of 18 U.S.C. § 371, and international parental kidnapping, 18 U.S.C. §§ 2, 1204, in the United States District Court for the Western District of New York for his participation in the conspiracy to kidnap Isabella. Judgment was entered on March 22, 2017. He was sentenced to thirty-six months on each count to be served concurrently and to one year of supervised release on each count to be served concurrently. The United States Court of Appeals for the Second Circuit entered judgment affirming the conviction on August 21, 2018. He petitioned for panel rehearing and rehearing en banc on September 5, 2018, which remains pending.

13.    <u>Victoria Hyden f/k/a Victoria Zodhiates</u>: Upon information and belief, Defendant Victoria Hyden is a resident and citizen of Lynchburg, Virginia, and at all relevant times was an employee of Response Unlimited, Inc. and Liberty University, Inc.

14.    <u>Response Unlimited, Inc.</u>: Defendant Response Unlimited, Inc. is a Delaware corporation with a principal place of business in Waynesboro, Virginia.

15.    <u>Linda Marie Wall</u>: Upon information and belief, Defendant Linda Wall is a resident and citizen of Concord, Virginia.

16.    <u>Rena M. Lindevaldsen</u>: Upon information and belief, Defendant Rena M. Lindevaldsen is a resident and citizen of Lynchburg, Virginia, and at all relevant times was an employee of Liberty Counsel, Inc. and of Liberty University, Inc.

17.    <u>Mathew D. Staver</u>: Upon information and belief, Defendant Mathew D. Staver is a resident and citizen of Orlando, Florida, and at all relevant times was an employee of Liberty Counsel, Inc. and Liberty University, Inc. He founded Liberty Counsel, Inc. in or about 1989. From in or about 2006 to 2014, he was dean and professor of law at Liberty University School of Law in Lynchburg, Virginia. He has sufficient ties to Virginia to subject him to the personal

jurisdiction of this Court, and Plaintiffs' claims arise out of or relate to his conduct within or purposefully directed at the Commonwealth of Virginia.

18.     Liberty Counsel, Inc.: Defendant Liberty Counsel, Inc. is a Florida nonprofit law firm affiliated with Liberty University, Inc. with principal places of business in Lynchburg, Virginia, and Orlando, Florida. It also has sufficient ties to Virginia to subject it to the personal jurisdiction of this Court, and Plaintiffs' claims arise out of or relate to its conduct within the Commonwealth of Virginia. It opened an office on the Liberty University campus in Lynchburg, Virginia, in or about 2005.

19.     Liberty University, Inc.: Defendant Liberty University, Inc. is a Virginia educational institution with a principal place of business in Lynchburg, Virginia. Liberty University School of Law is part of Liberty University. Liberty University was founded by Jerry Falwell, who also founded Thomas Road Baptist Church and Liberty Christian Academy. At all relevant times, Thomas Road Baptist Church and Liberty Christian Academy were located on Liberty University's campus.

## COMMON ALLEGATIONS OF FACT

20.     Isabella Miller-Jenkins is the daughter of Lisa Miller and Janet Jenkins. She was born in 2002 while the two mothers were united in a Vermont civil union. When Isabella was seventeen months old, Lisa Miller moved with Isabella to Virginia and petitioned the Rutland Family Division of the Vermont Superior Court ("Vermont Family Court") to dissolve the union. The family, appellate, and supreme courts of both Vermont and Virginia have since ruled that the Vermont Family Court has continuing and exclusive jurisdiction over custody determinations regarding Isabella Miller-Jenkins, that she has a right to a relationship with both of her parents, and that it is in her best interests to have contact with both of her parents on a schedule ordered by the court.

21.     At or about the time she petitioned for dissolution of the civil union in 2004, Lisa Miller asserted the belief that homosexuality was sinful and that Isabella should be shielded from exposure to the "lifestyle." At or about this time, Lisa Miller joined the Keystone Baptist Church in Winchester, Virginia. There, she formed a friendship with Pastor Douglas Wright. While she was a member of Keystone Baptist Church, Lisa Miller began to deny the court-ordered parent-child contact between Isabella and Jenkins. As a result, Lisa Miller was found in contempt of the Vermont court orders starting in 2004.

22.     Since 2004, there have been numerous instances when Jenkins was entitled to lawful custody of Isabella in Vermont, including during vacations, holidays, and weekends and continuously since January 1, 2010, when transfer of Isabella to Jenkins was supposed to occur pursuant to a November 20, 2009 order of the Vermont Family Court. However, since 2008, Jenkins and Isabella have only seen each other on two occasions. Both the Vermont Family Court and the juvenile courts in Virginia, which registered and enforced the Vermont orders, have found Lisa Miller in contempt and imposed sanctions for her conduct. Despite these sanctions, Lisa Miller continued to ignore the courts' orders with the assistance and encouragement of Defendants. Since January 2010, Isabella has been listed as missing by the National Center for Missing and Exploited Children, the victim of a family abduction.

**2004–2008**

23.     In or about 2004, Linda Wall, a Virginia anti-gay activist, was contacted by attorney Rena Lindevaldsen of Liberty Counsel and was asked to meet with Lisa Miller to screen her for representation by lawyers working at Liberty Counsel. After this screening, Lisa Miller was accepted for representation by Liberty Counsel attorneys and also formed a friendship with Wall. Lisa Miller's lead attorneys were Mathew Staver and Lindevaldsen.

24.     In 2005, Lindevaldsen joined the faculty of Liberty University School of Law, where she continued to practice law as an employee of Liberty Counsel from her law school office. Staver became dean of the law school in or about 2006.

25.     Liberty University and Liberty Counsel shared common leadership, and Liberty Counsel had offices on the university's campus in a building shared with Liberty University School of Law. Liberty University partnered with Liberty Counsel on the latter's cases through the Center for Constitutional Litigation and Policy. Liberty Counsel trained Liberty University law students, essentially serving as a law school clinical program. Starting at least as early as 2008, Liberty University touted to prospective law school applicants the partnership between the two entities in which Liberty University students could participate in Liberty Counsel's newly filed and ongoing cases. During the relevant time period, Liberty University School of Law relied on Liberty Counsel to maintain its externship program and to provide students with experience in litigation and appellate practice.

26.     Liberty University and Liberty Counsel publicly advertised their joint participation in the representation of Lisa Miller in her Virginia and Vermont litigation over custody of Isabella. Lindevaldsen used the resources of Liberty University to carry out the business of her representation of Lisa Miller, including her Liberty University email address to communicate with Jenkins's counsel and, upon information and belief, her Liberty University phone to participate in hearings in Vermont. Lindevaldsen and Staver incorporated Lisa Miller's case into their teaching at Liberty University, including an exam question that asked students to advise Lisa Miller on how to respond to a hypothetical order requiring that custody of Isabella be transferred to Jenkins.

27.     At the time of the final contested hearing to dissolve the civil union, which due to numerous appeals did not occur until April 2007, Lisa Miller testified that in the future she would comply with court orders regarding such contact despite her failure to do so in the past. On June 15, 2007, the Vermont Family Court issued a final order awarding legal and physical parental rights and responsibilities to Lisa Miller subject to the time that Jenkins was entitled to lawful custody during holidays, vacations, and some weekends.

28.     Between June 2007 and December 2007, Lisa Miller did comply with the orders of the Vermont Family Court on a number of occasions. Isabella spent a week in Vermont with Jenkins and had several overnight visits in Virginia at the home of Jenkins's parents, Isabella's grandparents Ruth and Claude Jenkins. The relationship between Isabella and Jenkins was in the process of being repaired. However, this compliance was short lived.

29.     In the spring of 2008, Lisa Miller, with the encouragement and support of Defendants, moved with Isabella from her home in Winchester, Virginia, to the Lynchburg, Virginia area. Lisa Miller was hired as a teacher at Liberty Christian Academy, and Isabella was enrolled as a student. Lisa Miller began to associate more openly with Defendants. Upon information and belief, Lisa Miller spoke about her custody battle at assemblies of students at Liberty Christian Academy.

30.     Upon information and belief, in the spring of 2008, Lisa Miller and Wall met to discuss what Lisa Miller should do "knowing that Virginia" law was not going to prevent Isabella from having contact with Jenkins. At this time, appellate courts in Vermont and Virginia had affirmed Jenkins's parental rights. Upon information and belief, Wall and Lisa Miller decided and agreed as early as June 2008 that Lisa Miller should flee with Isabella.

31.     In the spring of 2008, Lisa Miller, Wall, and other members of Thomas Road Baptist Church ("TRBC"), including Deborah Thurman, who ran a woman's group at TRBC, organized the Protect Isabella Coalition ("PIC"). The purpose of PIC was to prevent court-ordered contact between Isabella and Jenkins. A Facebook site and other social media were established and used to solicit donations to PIC on behalf of Lisa Miller.

**2009**

32.     Lisa Miller continued to be in contempt of court-ordered visitations of Isabella with Jenkins, and threatened future acts of custodial interference. She appeared on a radio program called "Janet Parshall's America" and stated that she would not comply with a court's order to transfer legal and physical rights and responsibilities to Jenkins.

33.     On May 27, 2009, Jenkins filed a Motion to Modify Parental Rights and Responsibilities in the Vermont Family Court. This motion requested a transfer of custody to Jenkins due to Lisa Miller's continued interference with court-ordered visitation. On May 29, 2009, Lisa Miller communicated with Philip Zodhiates, President of Response Unlimited, a Christian direct mail marketing company.

34.     Upon information and belief, Response Unlimited had been working with Liberty Counsel since 2008 to raise funds in support of the effort to terminate Jenkins's contact with her daughter, Isabella. On January 21, 2009, Zodhiates emailed an employee of Liberty Counsel, offering "some personal options" for Lisa Miller in the event that her legal fight failed.

35.     On August 21, 2009, the Vermont Family Court held a full-day hearing on Jenkins's request to transfer custody of Isabella to her in light of Lisa Miller's ongoing violation of court orders and her disregard of Isabella's best interests. Lisa Miller was not present for the hearing but appeared through counsel.

36.     On August 25, 2009, the Juvenile and Domestic Relations District Court of Frederick County, Virginia held a hearing on Jenkins's motion to hold Lisa Miller in contempt of the Vermont Family Court orders, and her motion to enforce the orders in the Commonwealth of Virginia. The Virginia court held Lisa Miller in contempt and fined her $100 per day for any future days of missed contact between Jenkins and Isabella. Lisa Miller personally appeared at this hearing along with her attorneys Staver and Lindevaldsen. She also held a press conference flanked by Staver and Lindevaldsen. Members of the PIC were also present.

37.     On September 4, 2009, the Vermont Family Court held a hearing at which it issued an interim order while Jenkins's motion to transfer custody (which had been heard on August 21, 2009) was under consideration. The Vermont Family Court ordered contact between Jenkins and Isabella from September 25, 2009, until September 27, 2009. Lisa Miller did not personally appear at that hearing, and her attorneys participated via telephone.

38.     On or about September 5, 2009, Lisa Miller emailed Thurman and stated that she knew of the September order. Thurman posted this email on Facebook. Lisa Miller also granted an interview to an online publication called Lifesitenews.com, discussing the order and what she thought would happen if she did not follow it—that she would lose custody.

39.     By the late summer of 2009, Defendants had devised a plan to kidnap Isabella and avoid detection by hiding among the Beachy Amish-Mennonite Christian Brotherhood ("Brotherhood") to enable her abduction of Isabella. Lisa Miller's involvement with the Brotherhood was not known to Jenkins until April 2011, when Timothy Miller, a Beachy Amish-Mennonite pastor in the Nicaragua Brotherhood, was arrested for aiding and abetting Isabella's abduction.

40.     Before her departure for Nicaragua, Lisa Miller and Isabella travelled back to Winchester, Virginia. During this trip, Lisa Miller arranged to meet Pastor Wright in a parking lot so that she and Isabella could say "good-bye" to him.

41.     Unbeknownst to Jenkins, on September 21, 2009, Lisa Miller and Isabella were transported, in disguise as Amish-Mennonites, to the United States–Canada border by Zodhiates. Lisa Miller and Isabella crossed the border at the Rainbow Bridge in a taxi in the early morning hours of September 22, 2009, just days before Isabella was scheduled to visit with Jenkins as ordered by the Vermont Family Court in its September 2009 interim order.

42.     On September 24, 2009, a Response Unlimited employee named Bill Dolack emailed Zodhiates an online news story about Lisa Miller being menaced with loss of custody if she did not comply with the September 25, 2009 visitation. Zodhiates replied to that email stating: "Thanks, this is really old news though. The lawyers were pretty adamant about yesterday morning being the hearing."

43.     In the days before September 22, 2009, Lisa Miller and Zodhiates conspired with Kenneth Miller, a member of the Virginia Brotherhood with whom both Zodhiates and Zodhiates's daughter Victoria Hyden were acquainted, to avoid Isabella's court-ordered September visit with Jenkins and the anticipated transfer of her custody to Jenkins. They arranged the purchase of plane tickets from Canada to Nicaragua for Lisa Miller and Isabella. Kenneth Miller also arranged for a Canadian member of the Brotherhood to transport Lisa Miller from an Ontario hotel to the Toronto airport. Lisa Miller and Isabella flew to Mexico, then El Salvador, and then met Timothy Miller in Nicaragua. Kenneth Miller instructed Timothy Miller to purchase plane tickets for Lisa Miller and Isabella, and Timothy used his mother-in-law's

credit card to do so. Several days later, Kenneth Miller used cash to purchase a money order to reimburse Timothy Miller's mother-in-law.

44.     Upon information and belief, starting in September 2009, Lisa Miller and Isabella have lived near or among the Beachy Amish-Mennonite Community in Nicaragua ("Nicaragua Brethren"). This was done in secret and in such a way as to avoid detection by United States authorities and Jenkins. Lisa Miller went into "hiding" with Isabella among the Nicaragua Brethren but continued to communicate with members of TRBC and her attorney, Lindevaldsen, with the assistance of other Defendants and members of the Nicaragua Brethren. Upon information and belief, Lisa Miller went by the name "Sarah" and Isabella was called "Lydia" during at least some of their time in Nicaragua.

45.     In Nicaragua in the fall of 2009, Lisa Miller spoke with Andrew Yoder, who worked for a Mennonite Charity called Christian Aid Ministries. She told Yoder that Liberty Counsel had advised her that it would be in her best interests to disappear.

46.     Lisa Miller did not return Isabella for the court-ordered September 2009 visit, and Jenkins has not seen or heard from Lisa Miller or Isabella since that time. Jenkins arranged for a welfare check at Lisa Miller's last known address in Forest, Virginia, in December 2009, but no one was home. The police reported that the curtains were drawn and the lights were off.

47.     Jenkins did not learn until June 2010 that Lisa Miller and Isabella had left the United States for Nicaragua.

48.     In 2009, Hyden, Zodhiates's daughter, was an employee of Response Unlimited and also a "student worker" at Liberty University. Hyden's father emailed her at her Liberty University email address numerous times asking her to deliver messages to Lindevaldsen at Liberty University, including written messages from Lisa Miller requesting donations of

supplies. He also emailed Hyden at Liberty University to coordinate with Lindevaldsen about the removal of items from Lisa Miller's apartment to send to Lisa Miller in Nicaragua to enable her to remain outside the country, and the payment of rent for Lisa Miller's apartment.

49.     On September 20, 2009, both Zodhiates and Hyden communicated with Lisa Miller's father, Terry Miller, in Tennessee to assist in arranging Lisa Miller and Isabella's transportation from a Walmart parking lot in Lynchburg, Virginia, to Waynesboro, Virginia, from whence they would depart for Canada and Nicaragua the next day.

50.     In early November 2009, Lindevaldsen and Wall packed Lisa Miller and Isabella's personal belongings in their Virginia home into two bags. Zodhiates picked up these bags and arranged to have the bags transported to Nicaragua by sending them with his son's school teacher who was taking some children on a mission trip to Managua. Zodhiates arranged for the teacher, John Collmus, to deliver the bags at the airport to Timothy Miller. The bags also contained some supplies for Lisa Miller, such as peanut butter.

51.     Hyden used her employment at Liberty University to facilitate Lisa Miller's communication with her lawyer, Lindevaldsen, during the time that Lindevaldsen claimed she was unable to communicate with Lisa Miller, in an attempt to help her avoid service of contempt and enforcement pleadings filed by Jenkins to help locate Isabella.

52.     On November 20, 2009, after numerous contempt findings against Lisa Miller, the Vermont Family Court issued its order that legal and physical parental rights and responsibilities for Isabella be transferred to Jenkins. Thurman, a member of TRBC and the PIC, posted a note from Lisa Miller on Facebook on December 5, 2009, acknowledging the ruling.

53.     On November 20, 2009, the day that the order was issued transferring custody, Kenneth Miller made a phone call to Timothy Miller in Nicaragua. Kenneth Miller also

contacted Pastor Wright. He asked Pastor Wright to assist in disposing of Lisa Miller's

belongings from her apartment in Virginia.

54.     At a December 18, 2009 status conference, Plaintiff informed the Vermont

Family Court that Lisa Miller and Isabella seemed to be missing. Liberty Counsel filed an appeal

in the Vermont Supreme Court on Lisa Miller's behalf and requested a stay of the order

transferring custody of Isabella to Jenkins.

55.     A hearing on the motion for a stay was held on December 22, 2009. Lindevaldsen

participated telephonically. In response to the court's questions, Lindevaldsen made false

statements with the intent to mislead the court so that Lisa Miller could keep Isabella outside of

the country unbeknownst to Jenkins and federal and state authorities:

> THE COURT: But as to—as to actual contact with Lisa Miller,
> from the date of the decision that granted Janet Jenkins' request for
> a change of custody, have you had an opportunity to meet with Ms.
> Miller? Do you know where she is, I guess is the question.
>
> MS. LINDEVALDSEN: I do not, Your Honor. I had no reason to
> believe until this last conference when Ms. Star [counsel for
> Jenkins] indicated that, apparently, there's been no coming and
> going at her house, that she wasn't at her home. I've left—you
> know, again, I've left her messages. We're proceeding with this. I
> send her documents that we file, which has been our pattern. You
> know, Lisa, in the past, has, you know, depending on what's going
> on in the case, sometimes, you know, has been a little more
> secluded with things and dealing with it. She told me she was
> going to visit her brother that had just moved to Wisconsin. So I
> have not spoken to her since the order and had no reason to believe
> that that was any issue until I heard Ms. Star's representation on
> Friday.

56.     One week later, on December 30, 2009, after the news of Lisa Miller and

Isabella's disappearance broke, Thurman made a statement on her internet blog, which she

linked to the Only One Mommy site. She stated, *inter alia*:

> So, the blogosphere and the mainstream media are now abuzz with
> the news that—gasp!—Lisa and Isabella Miller are nowhere to be

found, just days before the court-mandated transfer of custody of
7-year-old Isabella to Janet Jenkins. Ya reckon?

And in conclusion, she wrote:

The majority of Americans overwhelmingly support traditional
marriage. If the tyrannical minority wants to push against that, it
can and will be met with civil disobedience. There is no other way.

57.    This threat was removed from the internet after Jenkins printed it out and brought

it to the police.

**2010**

58.    Lisa Miller did not return Isabella for the January 1, 2010 transfer of custody but

held her outside the United States, despite her knowledge of the ruling. A hearing was held on

January 22, 2010, in the Vermont Family Court. Lindevaldsen participated telephonically.

During the hearing, Lindevaldsen was sworn in as a witness and made false statements with the

intent to mislead the court so that Lisa Miller could keep Isabella outside of the country:

Q. Do you have any idea where your client may be?

A. I do not.

Q. Do you—can you think of anyone who knows where she is?

A. I do not.

Q. Do you know anyone that has had contact with her more
recently than you?

A. No one that has told me. I do not.

59.    In January 2010, Wall appeared on television with several members of the PIC to

endorse the kidnapping. In discussing her role, Wall compared herself to Harriet Tubman and

suggested she would take similar actions with regard to other children from same-sex families.

60.     Wall also wrote on Facebook that, if anyone knew of Lisa Miller and Isabella's whereabouts, they should not tell anyone. She also made several phone calls to law enforcement to instruct them that they should not look for Lisa Miller and Isabella.

61.     In May 2010, Zodhiates contacted Kenneth Miller, purportedly to arrange the purchase of hydrangea plants from Milmont Greenhouses for Hyden's wedding. Upon information and belief, this transaction with Zodhiates was never recorded in the normal course of business but instead was a cover for a fraudulently transfer through a payroll account into a check to Yoder for $500. Yoder was never an employee of Milmont Greenhouses. On August 10, 2012, Yoder testified under oath that he received a check to cash from Kenneth Miller to enable him to bring cash to Nicaragua to transfer to Timothy Miller. Yoder testified that he believed this cash was related to Lisa Miller. Yoder also testified that he had met Lisa Miller and Isabella through Timothy Miller in 2009 and that he knew of her custody case.

62.     With the assistance of TRBC members, including Wall and Lindevaldsen, as well as Kenneth Miller, Timothy Miller, Zodhiates, and Hyden, in their individual capacities and as agents of Response Unlimited and Liberty University, Lisa Miller was able to leave the United States with Isabella in advance of September 25, 2009, and remain there past January 1, 2010. Wall sought donations for Lisa Miller after January 2010, and Liberty Counsel and Lindevaldsen misled courts in two states to delay contempt proceedings aimed at locating Isabella.

### 2011–2013

63.     Timothy Miller was arrested for aiding and abetting the kidnapping of Isabella in April 2011. In November 2011, charges were dismissed when he agreed to provide truthful testimony for the United States government. However, Timothy Miller failed to give truthful testimony and failed to return to the United States for trial. He was subsequently deported to the United States to stand trial. He pleaded guilty to conspiracy to commit international parental

kidnapping, and judgment was entered on March 23, 2017. He was sentenced to time served (eight months) and one year of probation.

64. At the time of Timothy Miller's arrest, upon information and belief, Isabella was living with Lisa Miller in Jinotega, Nicaragua, where Lisa Miller was teaching in a school. After the arrest, when her location was discovered, Isabella was uprooted again to an unknown location.

65. In November 2011, Kenneth Miller was indicted for aiding and abetting the international parental kidnapping of Isabella. Kenneth Miller, who was living in Ireland at the time of his arrest, had been a pastor and member of the Pilgrim Christian Fellowship in Stuart's Draft, Virginia, where Hyden had previously attended grade school. Through his employment at the church, he was acquainted with Hyden and Zodhiates.

66. At the trial of Kenneth Miller in August 2012, the government introduced phone records that showed phone calls made from Zodhiates's cell phone between 1:28 pm and 1:30 pm on September 22, 2009, to a cell phone with an Orlando area code that is registered to Liberty Counsel, a landline registered to Liberty Counsel, and a landline registered to Liberty University. Staver, then dean of Liberty University School of Law, split his time between Lynchburg, Virginia, and Orlando, Florida. At the time that the calls were made, Zodhiates was still en route back to Virginia after depositing Lisa Miller and Isabella near the United States–Canada border.

67. Lisa Miller's attorneys, through Lindevaldsen, have at all times maintained that they did not know their client's location to various courts in Vermont (including in sworn testimony of Lindevaldsen) and Virginia. They made similar misrepresentations to the press that Lisa Miller simply stopped communicating with them and disappeared. This was false. They

knew of Lisa Miller's whereabouts, knew the identities of certain co-conspirators, solicited

donations, and retrieved items for shipment to Lisa Miller, to support the kidnapping and

concealment of Isabella. Also, while Lisa Miller and Isabella were missing, Lisa Miller's

attorneys continued to mislead the Vermont and Virginia courts by pressing appeals on Lisa

Miller's behalf until the last appeals were exhausted in November 2010 (more than a year after

she was missing), stating that they had advance instructions from Lisa Miller as to her wishes for

the ongoing litigation.

68.     Lindevaldsen published a book in 2011 with New Revolution Publishers, an

imprint of Liberty Counsel, about Lisa Miller and the custody dispute, citing portions of Lisa

Miller's personal diaries, which Lindevaldsen has stated were entrusted to her before Lisa Miller

disappeared. Lindevaldsen and Staver have appeared on radio and television to promote the

book, entitled *Only One Mommy: A Woman's Battle for Her Life, Her Daughter, and Her

Freedom: The Lisa Miller Story*. Lindevaldsen's book was required reading for all incoming

Liberty University School of Law students.

69.     On February 2, 2012, the Nicaragua Brethren released an official statement

detailing how Lisa Miller had come to be in hiding among them. The statement conceded that

Lisa Miller and the Nicaragua Brethren learned in early April 2011, when Timothy Miller was

arrested, that an arrest warrant had been issued for Lisa Miller for the kidnapping of Isabella, and

that as a result she decided to go into hiding.

**Vermont Litigation**

70.     Jenkins filed a complaint in the United States District Court for the District of

Vermont on August 14, 2012. She named as defendants, among others, Lisa Miller, Kenneth

Miller, Timothy Miller, Response Unlimited, Philip Zodhiates, Victoria Hyden, Liberty

University, and Linda Wall. At that time, Jenkins did not know that, in late 2009, Zodhiates had

emailed Hyden to relay messages to Lindevaldsen from Lisa Miller and to coordinate with Lindevaldsen the removal of Lisa Miller's belongings from her Virginia home to be transported to Nicaragua.

71.     All defendants challenged the court's personal jurisdiction over them. On October 23, 2013, the court dismissed Liberty University for lack of personal jurisdiction in Vermont, granted jurisdictional discovery with respect to Response Unlimited, and denied the motions of Kenneth Miller, Timothy Miller, Zodhiates, Hyden and Wall. Lisa Miller did not appear.

72.     By order dated April 6, 2015, the case was stayed pending the criminal proceedings against Zodhiates.

73.     On October 7, 2016, Jenkins moved to join Liberty University, Liberty Counsel, Staver, and Lindevaldsen as defendants in light of the information newly discovered through the Zodhiates trial.

74.     After several rounds of motion practice, the Vermont district court granted motions to dismiss Staver and Liberty University for lack of jurisdiction and failure to state a claim, and denied motions to dismiss brought by the other defendants named in this complaint. These were interlocutory findings and were not certified as final judgments.

**COUNT ONE**
(Tortious Interference with Parental Rights)

Plaintiffs incorporate by reference paragraphs 1 through 74 as though fully set forth herein.

75.     Plaintiffs Janet Jenkins and Isabella Miller-Jenkins allege that on or about September 21, 2009, Lisa Miller did commit the intentional tort of tortious interference with parental rights by kidnapping Isabella Miller-Jenkins and transporting her, while both disguised as Amish-Mennonites, outside of the United States in order to interfere with Jenkins's lawful

court-ordered custody of Isabella between the dates of September 25, 2009, and September 27, 2009. Plaintiffs also allege that Lisa Miller intentionally held Isabella Miller-Jenkins outside of the United States, specifically in Nicaragua, to interfere with Jenkins's lawful court-ordered custody of Isabella between the dates of January 1, 2010, and the present. Such acts also constitute tortious interference with parental rights under Vermont and Virginia law.

76.     Plaintiffs Jenkins and Isabella Miller-Jenkins further allege that Response Unlimited, Philip Zodhiates, Victoria Hyden, Liberty University, Kenneth Miller, Timothy Miller, Linda Wall, Rena Lindevaldsen, Mathew Staver, Liberty Counsel, and Liberty University participated in these acts as described in paragraph 76 above.

77.     Plaintiffs Jenkins and Isabella Miller-Jenkins further allege that Lisa Miller did conspire with, and was aided and abetted by, Liberty Counsel; Liberty University; Response Unlimited; Philip Zodhiates, individually and as an agent/officer of Response Unlimited; Victoria Hyden, individually and as an agent of Response Unlimited and Liberty University; Kenneth Miller; Timothy Miller; Linda Wall; Rena Lindevaldsen, individually and as an agent of Liberty Counsel and Liberty University; and Mathew Staver, individually and as an agent of Liberty Counsel and Liberty University.

## COUNT TWO
(Abduction)

Plaintiffs incorporate by reference paragraphs 1 through 77 as though fully set forth herein.

78.     Plaintiffs Janet Jenkins and Isabella Miller-Jenkins allege that on or about September 21, 2009, Lisa Miller did commit the intentional tort of abduction by kidnapping Isabella Miller-Jenkins and transporting her, while both disguised as Amish-Mennonites, outside of the United States in order to interfere with Jenkins's lawful court-ordered custody of Isabella

between the dates of September 25, 2009, and September 27, 2009. Plaintiffs also allege that Lisa Miller intentionally held Isabella Miller-Jenkins outside of the United States, specifically in Nicaragua, to interfere with Jenkins's lawful court-ordered custody of Isabella between the dates of January 1, 2010, and the present. Such acts constitute the act or threat of kidnapping chargeable as a criminal offense under Vermont law and punishable by imprisonment for more than one year. Such acts also constitute the act or threat of abduction chargeable as a criminal offense under Virginia law and punishable by imprisonment for more than one year.

79.     Plaintiffs Jenkins and Isabella Miller-Jenkins further allege that Response Unlimited, Philip Zodhiates, Victoria Hyden, Liberty University, Kenneth Miller, Timothy Miller, Linda Wall, Rena Lindevaldsen, Mathew Staver, Liberty Counsel, and Liberty University participated in these acts as described in paragraph 79 above.

80.     Plaintiffs Jenkins and Isabella Miller-Jenkins further allege that Lisa Miller did conspire with, and was aided and abetted by, Liberty Counsel; Liberty University; Response Unlimited; Philip Zodhiates, individually and as an agent/officer of Response Unlimited; Victoria Hyden, individually and as an agent of Response Unlimited and Liberty University; Kenneth Miller; Timothy Miller; Linda Wall; Rena Lindevaldsen, individually and as an agent of Liberty Counsel and Liberty University; and Mathew Staver, individually and as an agent of Liberty Counsel and Liberty University.

**COUNT THREE**
(Conspiracy to Violate Civil Rights)

Plaintiffs incorporate by reference paragraphs 1 through 80 as though fully set forth herein.

81.     42 U.S.C. § 1985(3) provides a civil cause of action for any person who is injured in his person or property by reason of "two or more persons in any State or Territory conspir[ing]

or go[ing] in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws."

82.     Plaintiffs Janet Jenkins and Isabella Miller-Jenkins allege that Lisa Miller conspired with Liberty Counsel; Liberty University; Response Unlimited; Philip Zodhiates, individually and as an agent/officer of Response Unlimited; Victoria Hyden, individually and as an agent of Response Unlimited and Liberty University; Kenneth Miller; Timothy Miller; Linda Wall; Rena Lindevaldsen, individually and as an agent of Liberty Counsel and Liberty University; and Mathew Staver, individually and as an agent of Liberty Counsel and Liberty University, to violate the civil rights of Janet Jenkins and Isabella Miller-Jenkins, based on class-based, invidiously discriminatory animus against same-sex couples and against Janet Jenkins due to sexual orientation, and to prevent the courts of Vermont and Virginia from securing to them equal protection of the law, and to prevent or hinder State authorities from securing equal protection of the law to same-sex couples.

## DAMAGES

83.     As a result of Isabella's kidnapping, Plaintiff Janet Jenkins has suffered extreme emotional distress and the loss of her daughter's companionship.

84.     Janet Jenkins has incurred legal fees and lost business as a result of having to close her daycare center in order to attend contempt and other court hearings and meetings with law enforcement necessary to locate her daughter. These losses constitute a damage and injury to her business and property. Jenkins has also been unable to collect court-ordered fines, which constitute a property interest. These fines have been accruing in the amount of $100 per day from

September 25, 2009, to September 27, 2009, and since January 1, 2010, and are expected to continue indefinitely while Isabella is abducted.

85.     Plaintiff Isabella Miller-Jenkins has suffered emotional distress as a result of the abduction. According to Timothy Miller, at one point, Isabella was living in isolation and having a difficult time. In the most recent report about Isabella's whereabouts, it seems that her freedom of movement is severely restricted by the Nicaragua Brethren and Lisa Miller, and that her standard of living is far below what she would have enjoyed had she been living with Janet Jenkins.

86.     Plaintiff Isabella Miller-Jenkins has also suffered the loss of emotional and financial support from her mother, Janet Jenkins. Isabella has a property interest in child support from one or both parents based on her needs and best interests. The child support previously due to the custodial parent for Isabella's care was approximately $250 per month. This deprivation continues today and is expected to continue indefinitely into the future. In addition to the property right of child support, upon information and belief, Isabella is currently being deprived of an education, medical and dental care, and the support of her extended family, including grandparents Ruth and Claude Jenkins. All of these factors currently and will in the future result in an injury to Isabella's property and future business and employment.

87.     Plaintiffs request compensatory and punitive damages against Defendants for the intentional tort of abduction of Isabella and tortious interference with parental rights and for violations of Plaintiffs' civil rights.

## JURY DEMAND

Plaintiffs request a jury trial on factual issues and the required fee has been or will be paid.

## PRAYER

For the above reasons, Plaintiffs request that judgment be entered in Plaintiffs' favor against Defendants, jointly and severally, in the following particulars:

1.    An order that the Defendants cease their unlawful activities immediately and return Isabella Miller-Jenkins to the United States;

2.    Actual and punitive damages as requested herein;

3.    Attorney's fees and expert witness fees;

4.    Costs of court; and

5.    Any other relief to which the Plaintiffs are justly entitled.

September 21, 2018                               Respectfully submitted.

                                                s/ **Mary Bauer**
                                                Virginia Bar Number: 31388
                                                Attorney for Plaintiffs
                                                SOUTHERN POVERTY LAW CENTER
                                                1000 Preston Avenue
                                                Charlottesville, Virginia 22903
                                                Telephone: (470) 606-9307
                                                Fax: (434) 977-0558
                                                Email: mary.bauer@splcenter.org
                                                Email: CMECFLGBT@splcenter.org